# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRIS SEVIER,

       *Plaintiff*,

  v.

ALAN LOWENTHAL, U.S. Representative
for California's 47th Congressional District,
*et al.*,

       *Defendants*.

Civil Action No. 17-570 (RDM)

## <u>MEMORANDUM OPINION</u>

Plaintiff Chris Sevier, proceeding *pro se*, seeks the removal of "the Gay Pride Rainbow Colored Flag" from "the halls and public access way[s] of Federal legislative buildings." Dkt. 1 at 2 (Compl. ¶ 2). "[H]omosexuality," he says, "is a religion," *id.* at 16 (Compl. ¶ 32), which the public display of the gay pride flag impermissibly favors, *id.* at 28–30 (Compl. ¶¶ 65–76). According to Sevier, display of the flag violates the Establishment Clause, discourages him from lobbying Congress, and violates his rights to equal protection and substantive due process. *Id.* at 28–32 (Compl. ¶¶ 65–91). Sevier has made similar claims in, by his count, "more than [fifteen]" other lawsuits. Dkt. 25 at 3. In addition, Sevier asks that the Court "declare that the holdings in *United States v. Windsor*, . . . and *Obergefell v. Hodges*, . . . are intellectually dishonest and amount to acts of judicial tyranny and judicial malpractice." Dkt. 1 at 36 (Compl. Prayer for Relief).

Currently pending before the Court are Defendants' motion to dismiss, Dkt. 8, Sevier's motion for leave to amend his complaint, Dkt. 25, a motion to intervene, Dkt. 5, and numerous other motions. For the reasons explained below, the Court will **GRANT** Defendants' motion to

dismiss, will **DENY** the motion to amend, will **DENY** the motion to intervene, and will dispose of the remaining motions.

## I. BACKGROUND

Sevier's complaint consists largely of his views regarding homosexuality and criticisms of the Supreme Court's *Obergefell* decision. *See, e.g.*, Dkt. 1 at 3, 6, 10–28 (Compl. ¶¶ 5–6, 14, 19, 21, 23–31, 33, 35–45, 51–52, 56–58, 62–64). It also recounts Sevier's efforts to "put[] [*Obergefell*] to the test" by marrying inanimate objects. *Id.* at 5 (Compl. ¶ 12); *see also, e.g., id.* at 22–23 (Compl. ¶¶ 49–54). The present action appears to focus, however, on the following allegations: Defendants, who are four members of the U.S. House of Representatives, have allegedly "authorized and installed [one or more] Gay Pride Rainbow Colored Flag[s]" in the hallways outside their offices, *id.* at 6–11 (Compl. ¶¶ 16–19), which Sevier "frequently encounter[s]," *id.* at 5 (Compl. ¶ 12). Given Sevier's "religious worldview" that "homosexuality is obscene, immoral, [and] subversive to human flourishing," *id.* at 5–6, 11–12 (Compl. ¶¶ 13, 21), he "[i]s offended by [the flags'] presence," *id.* at 4–5, 23 (Compl. ¶¶ 11, 55). The flags, he says, make him "feel[] unwelcome[]," *id.* at 5 (Compl. ¶ 12), because he does not "adhere to [Defendants'] particular religious orthodoxy," *id.* at 6 (Compl. ¶ 15).

The "religious ideology" that Sevier has in mind is homosexuality itself. *See, e.g., id.* at 16 (Compl. ¶ 32) ("[H]omosexuality is a religion . . . ."). He contends that "the [h]omosexual church" is "the largest denomination" of "the overall church of 'western expressive individualism postmodern moral relativism,'" *id.* at 2–3, 28, 29 (Compl. ¶¶ 4, 69, 74), which posits that "nobody's version of morality as a basis of law matters except for the private moral code that [the adherent] personally advocat[es]," *id.* at 12 (Compl. ¶ 22). In Sevier's view, then, the gay pride flag "is a 'religious symbol' for the homosexual denomination," *id.* at 2–3 (Compl.

¶ 4), and its "placement . . . amounts to [Defendants'] endorsement of a particular religion," *id.* at 28 (Compl. ¶ 67).

The public display of these flags, moreover, allegedly "treats different sects within the church of moral relativism with different degrees of favorability." *Id.* at 24–25 (Compl. ¶ 59). Sevier says he belongs to "a less popular sect" of the church of moral relativism, *id.* (Compl. ¶ 59), which he calls the "machinist sect[]," *id.* at 29 (Compl. ¶ 72). As a "machinist," Sevier's "sex-based self-asserted identity narrative is that he prefers to be married to an inanimate object." *Id.* at 22 (Compl. ¶ 49). So, according to Sevier, unless Defendants "install a flag that represents people who self-identify as polygamists, machinists, zoophiles, and heterosexuals," *id.* at 21 (Compl. ¶ 47), their actions "treat . . . the homosexual denomination of . . . the church of moral relativism with disproportionate favor," *id.* at 29 (Compl. ¶ 72).

Based on these allegations, Sevier alleges violations of the Establishment, Equal Protection, and Due Process clauses. *Id.* at 28–32 (Compl. ¶¶ 65–91). He seeks an injunction requiring that Defendants remove the flags, or, in the alternative, "fly the [f]lags that represent the people in the zoophile, polygamy, and machinism sects [of] the overall church of moral relativism." *Id.* at 36 (Compl. Prayer for Relief). He also seeks declaratory judgments that (1) Defendants' display of the flags "is unconstitutional;" (2) that *Obergefell* and *Windsor* are "intellectually dishonest . . . acts of judicial tyranny and judicial malpractice;" and (3) that "homosexuality is a 'religion' . . . [that the] government cannot legally recognize." *Id.* (Compl. Prayer for Relief).

Sevier's initial lawsuit was filed on March 23, 2017, Dkt. 1, and on August 9, 2017, he filed a motion for summary judgment, Dkt. 4. On August 15, 2017, John Gunter Jr., Whitney Kohl, and Joan Grace Harley—"three self-identified polygamists" who appear to be coordinating

with Sevier in this and other cases—moved to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or alternatively, to intervene permissively under Rule 24(b)(1)(B). Dkt. 5 at 8. Gunter, Kohl, and Harley allege Equal Protection, Due Process, and Establishment Clause claims that are similar in form to those advanced by Sevier, although their allegations of injury focus even more on their opposition to gay marriage generally and their "feel[ing] deeply offended" by "[t]he Defendants['] display of the gay pride flag for self-serving political reasons." Dkt. 5 at 8–10, 21.

On September 22, 2017, Defendants—four members of the House of Representatives who have displayed the flags outside their offices—moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the grounds that Sevier lacks standing and that the case presents a nonjusticiable political question; under Rule 12(b)(5) for insufficient service of process; and under Rule 12(b)(6) for failure to state a claim. *See* Dkt. 8. They ask also that the Court treat their motion to dismiss as an opposition to the motion to intervene and Sevier's motion for summary judgment. *Id.* at 10 n.2. Because Defendants' motion raises a number of threshold issues, the Court denied Sevier's motion for summary judgment as premature, Minute Order (Sept. 24, 2017), and ordered him to respond to Defendants' motion to dismiss, Dkt. 9. Instead, he filed two "affidavits" in support of his complaint. Dkt. 10; Dkt. 11. Then, on October 2, 2017, he moved to stay these proceedings pending the resolution of his motion to intervene in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, No. 16-111, a case currently before the Supreme Court. Dkt. 12. The Court denied that motion, Minute Order (Oct. 4, 2017), and Sevier continued to file affidavits in support of his complaint, Dkt. 15; Dkt. 16; Dkt. 17; Dkt. 18; Dkt. 19. On October 7, 2017, Sevier filed a "motion for the court to make an expedited

ruling on the intervention motion." Dkt. 20 at 1. Although not styled as such, this document responds to the arguments made in Defendants' motion to dismiss. *See id.* at 2–6.

On November 4, 2017, Sevier moved to amend his complaint, elaborating on his earlier objections to the Supreme Court's decision in *Obergefell* and incorporating additional arguments in response to the motion to dismiss. *See* Dkt. 25; Dkt. 26. Sevier filed this document—he refers to it as a combined motion to amend, statement in support of the motion to intervene, and response to the motion to dismiss—twice, but with different exhibits attached. *Compare* Dkt. 25, *with* Dkt. 26. Defendants, in turn, filed a reply to the portion of the document opposing the motion to dismiss, Dkt. 27, and a response to the portion seeking to amend the complaint, Dkt. 28. Sevier then sought leave to file an overlength reply in support of his motion to amend, Dkt. 30, and an overlength surreply to the motion to dismiss, *see* Dkt. 32, in addition to filing shorter versions of both, Dkt. 30-2; Dkt. 32-2.

Since the conclusion of briefing on the motion to dismiss and motion to amend, two of the proposed intervenors filed motions for summary judgment, Dkt. 34; Dkt. 47, one of which is "essentially the same document" as Sevier's proposed surreply, Dkt. 32 at 2. Sevier has continued to file additional "affidavits" or "notices" not clearly relevant to any of the pending motions. *See* Dkt. 29; Dkt. 35; Dkt. 37; Dkt. 38; Dkt. 42; Dkt. 43; Dkt. 44; Dkt. 45; Dkt. 50. He has also moved for a scheduling conference, Dkt. 36, to strike a filing that the Clerk of the Court identified as having been entered in error, Dkt. 40, and to supplement his earlier pleadings with filings he or the proposed intervenors have made in other cases, Dkt. 41; Dkt. 46. Finally, the National Alliance of Black Pastors, Dkt. 48, and the Coalition of Doctors Defending Reparative Therapy, Dkt. 49, have sought leave to file amicus briefs.

For the reasons explained below, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 8; **DENY** the motion to intervene, Dkt. 5; **DENY** the motion to amend the complaint, Dkt. 25; **GRANT** the motion for leave to file an overlength reply in support of the motion to amend the complaint, Dkt. 30; **DENY** the motion for leave to file an overlength surreply to the motion to dismiss, Dkt. 32; **DENY** the motions for summary judgment filed by proposed intervenors, Dkt. 34; Dkt. 47, **DENY** the motion for a scheduling conference, Dkt. 36; **DENY** the motion to strike, Dkt. 40; **DENY** the motions to supplement, Dkt. 41; Dkt. 46; and **GRANT** the motions for leave to file amicus briefs, Dkt. 48; Dkt. 49.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6)

Defendants have first moved under Rule 12(b)(1) to dismiss the case for lack of subject matter jurisdiction. "The party invoking federal jurisdiction bears the burden of establishing" each of the elements of Article III standing, although "the manner and degree of evidence required" varies with "the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" will often suffice. *Id.*; *see also Owner-Operator Indep. Drivers Ass'n v. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018). "[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements," however, will not. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court need not "assume the truth of legal conclusions" nor must it "accept inferences that are unsupported by the facts set out in the complaint." *Id.* (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)) (internal quotation marks omitted).

Defendants have also moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Such a motion is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*,

292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 675, 678) (alterations in original) (citation omitted). The Court need not accept as true legal conclusions disguised as factual allegations, "'naked assertions' devoid of 'further factual enhancement,'" or a "'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)) (alterations omitted). The plaintiff, however, is entitled to "the benefit of all inferences that can be derived from the facts alleged." *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

**B.      Motion to Intervene Under Rule 24**

Parties seeking to intervene as of right under Federal Rule of Civil Procedure 24(a) must comply with four requirements. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013). First, "the application to intervene must be timely." *Id.* (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008)). Second, "the applicant must demonstrate a legally protected interest in the action." *Id.* (quoting *Karsner*, 532 F.3d at 885). Third, "the action must threaten to impair that interest." *Id.* (quoting *Karsner*, 532 F.3d at 885). Fourth, "no party to the action can be an adequate representative of the applicant's interests." *Id.* (quoting *Karsner*, 532 F.3d at 885). A movant seeking to intervene as of right pursuant to Rule 24(a) must also possess Article III standing. *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233–34 (D.C. Cir. 2003); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003).

"Permissive intervention is governed by Federal Rule of Civil Procedure 24(b), which provides, in pertinent part, that . . . ['·]the court may permit anyone to intervene who . . . has a

claim or defense that shares with the main action a common question of law or fact.'" *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quoting Fed. R. Civ. P. 24(b)(1)(B)) (third alteration in original). "In order to litigate a claim on the merits" under Rule 24(b), "the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). "In exercising its discretion" regarding permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "[P]ermissive intervention is an inherently discretionary enterprise," and district courts are afforded "wide latitude" in determining whether a third-party should be permitted to intervene. *Nat'l Children's Ctr.*, 146 F.3d at 1046.

## C.    Motion for Leave to File an Amended Complaint Under Rule 15(a)

A party may amend its complaint "once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). After 21 days, a party may only amend "with the opposing party's written consent or the court's leave." Fed R. Civ. P. 15(a)(2). Although courts "should freely give leave [to amend] when justice so requires," *id.*, that latitude does not extend to cases involving "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

## III. ANALYSIS

### A.    Motion to Dismiss

Defendants advance several arguments in their motion to dismiss.  First, they contend
that the Court lacks subject matter jurisdiction because Sevier does not have standing to
challenge the display of the rainbow flags at issue and, in any event, regulation of the display of
such flags presents a nonjusticiable political question.  Dkt. 8 at 10.  Second, they argue that
service was defective.  *Id.*  Third, they contend that Sevier has failed to state a claim upon which
relief may be granted.  *Id.*  Fourth, they argue that the complaint is frivolous and should be
dismissed under 28 U.S.C. § 1915(e)(2).  *Id.*  The Court first addresses its subject matter
jurisdiction, before turning to the merits.

Defendants correctly observe that Sevier's pleadings allege various injuries that are
insufficient to establish Article III standing.  The Court here, however, focuses on what it reads
to be the nub of his complaint:  "As a lobbyist in DC . . . Plaintiff has to frequently encounter the
Gay Pride Rainbow Flag in the public hallways of these federal buildings, where he often goes to
lobby [for] legislation . . . .  The Plaintiff feels unwelcome[] to access the buildings, to approach
the Defendants, and to consult with other members of the Democratic Party . . . ."  Dkt. 1 at 5
(Compl. ¶ 12).  Sevier also asserts that his "principal place of business is in the District of
Columbia," *id.* at 4–5 (Compl. ¶ 11), and that he "has regular and unwanted direct contact with
the" flags, *id*. at 6 (Compl. ¶ 14).  Given that the Court now reviews the complaint on a motion
to dismiss, these allegations suffice for standing to seek an injunction barring the display of the
flags.  *See In re Navy Chaplaincy*, 534 F.3d 756, 762–63 (D.C. Cir. 2008) (observing that while
"mere personal offense to government action does not give rise to standing to sue," in numerous
"religious display and prayer cases . . . courts have found (or at least apparently assumed)" that
standing exists when the government "engag[es] in religious speech that was observed, read, or

heard by the plaintiffs"); *Books v. City of Elkhart*, 235 F.3d 292, 298–301 (7th Cir. 2000) (holding that being "required to come in direct and unwelcome contact with the religious display in order to participate fully in government" established standing); *Felix v. City of Bloomfield*, 841 F.3d 848, 854–55 (10th Cir. 2016) (holding that plaintiffs who frequently drive or walk by a Ten Commandments monument have standing); *Suhre v. Haywood Cty.*, 131 F.3d 1083, 1086 (4th Cir. 1997) ("The injury that gives standing to plaintiffs in [the religious display] cases is that caused by unwelcome direct contact with a religious display that appears to be endorsed by the state. Such personal contact with state-sponsored religious symbolism is . . . the injury . . . ."); *Newdow v. Bush*, 391 F. Supp. 2d 95, 103 (D.D.C. 2005) ("In the religious-display cases, a personal connection [sufficient for standing] exists if a plaintiff is a member of the community in which the challenged religious exhibit is displayed, or if the plaintiff frequently visited the site of the display."); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485–87 (1982) (considering, when evaluating standing, the location of an action alleged to violate the Establishment Clause, the residence of the plaintiffs, and whether the action was learned of by the plaintiffs personally or conveyed through other means).

Defendants' argument that the political question doctrine deprives the Court of jurisdiction also fails because, as Defendants note, "[t]he authority possessed by the House to make its own rules is bounded only by 'constitutional restraints and fundamental rights.'" Dkt. 8 at 22 (quoting *Rangel v. Boehner*, 20 F. Supp. 3d 148, 168 (D.D.C. 2013)). Sevier alleges Defendants' actions run afoul of constitutional restraints (most notably the Establishment Clause). The political question doctrine, accordingly, does not prevent the Court from considering whether the actions of members of Congress inside the halls of the House may in fact violate the Establishment Clause.

The Court will nevertheless grant the motion to dismiss because Sevier has failed to state a claim for a violation of the Establishment, Equal Protection, or Due Process clauses. With respect to Sevier's Establishment Clause claim, he contends that his allegations must be measured against the three-pronged test first set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). *See, e.g.*, Dkt. 1 at 28 (Compl. ¶ 70). The Supreme Court, however, has offered conflicting signals about what standard currently applies in Establishment Clause challenges to religious displays in or near government buildings. *Compare Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (plurality opinion) ("Whatever may be the fate of the *Lemon* test in the larger scheme of Establishment Clause jurisprudence, we think it not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds."), *with id.* at 700 (Breyer, J., concurring in the judgment) (rejecting formal tests as no "substitute for the exercise of legal judgment" that "take[s] account of context and consequences measured in light of th[e] purposes" of the Religion Clauses, but treating the *Lemon* test as a "useful guidepost[]"), *and McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844, 859–65 (2005) (applying the *Lemon* test on the same day *Van Orden* was decided). The D.C. Circuit has not decided a religious display case after *Van Orden* and *McCreary County*, but in other contexts continues to apply a modified version of the *Lemon* test. *See, e.g.*, *In re Navy Chaplaincy*, 738 F.3d 425, 430–31 (D.C. Cir. 2013). Numerous Courts of Appeals considering the continuing vitality of *Lemon* in religious display cases, moreover, have concluded that Justice Breyer's opinion in *Van Orden* controls. *See, e.g.*, *Am. Humanist Assoc. v. Maryland-Nat'l Capital Park & Planning Comm'n*, 874 F.3d 195, 205 (4th Cir. 2017) (collecting cases). On that reading of the case, the Court "did not overrule *Lemon*" because "Justice Breyer actually recognized *Lemon*" as merely a "more formal" articulation of his context-driven approach. *Id.* (internal quotation marks omitted).

Regardless of whether *Lemon* or the *Van Orden* plurality sets forth the relevant test, Plaintiff has failed to state a claim. Under *Lemon*, government actions must "(1) have a secular legislative purpose; (2) have a principal or primary effect that neither advances nor inhibits religion; and (3) not result in excessive entanglement with religion or religious institutions." *In re Navy Chaplaincy*, 738 F.3d at 430 (quoting *Bonham v. D.C. Library Admin.*, 989 F.2d 1242, 1244 (D.C. Cir. 1993)). The *Van Orden* plurality held that "the nature of the [religious display] and . . . our Nation's history" were the only relevant considerations. 545 U.S. at 686. Both approaches thus require that a plaintiff, as an initial matter, identify a government display that could reasonably be understood as "religious" in character. *See Van Orden*, 545 U.S. at 682–83 (plurality opinion) (affirming district court holding "that a reasonable observer, mindful of the history, purpose, and context [of the religious display in question], would not conclude that th[e] passive monument conveyed the message that the State was seeking to endorse religion"); *McCreary Cty.*, 545 U.S. at 869 (considering whether a "reasonable observer could . . . think that the Counties meant to emphasize and celebrate the [religious display's] religious message); *id.* at 866 ("[T]he reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious display appears." (quoting *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780 (1995) (O'Connor, J., concurring in part and concurring in the judgment))); *Daniel Chapter One v. FTC*, 405 F. App'x 505, 506 (D.C. Cir. 2010) (holding that an Establishment Clause claim based on something other than a government action that is religious in character rests "upon a faulty premise").

Sevier has not cleared this initial hurdle. His claim rests on the premise that "homosexuality is a religion" within the meaning of the Establishment Clause. Dkt. 1 at 16 (Compl. ¶ 32). Elsewhere he describes homosexuality as a "sect/denomination of the 'sex-based

self-asserted' religion of 'western postmodern expressive individualism moral relativism.'" *Id.* at 6 (Compl. ¶ 15). Sevier offers no legal support for this proposition. Instead, he has presented the Court with thousands of pages of news clippings and affidavits from his supporters expressing their opposition to homosexuality, and more recently, with filings from other litigation in which he alleges similar injuries. To be sure, the governing case law does not precisely define the contours of what constitutes "religion." *See Alvarado v. City of San Jose*, 94 F.3d 1223, 1227 (9th Cir. 1996) (observing by way of explanation that "Establishment [Clause] cases usually . . . involve well-known religions" and that "defin[ing] religion . . . is a notoriously difficult . . . task"). But that does not mean there are no easy cases. To the contrary, courts are well-equipped to weed out spurious Establishment Clause "religions" on grounds of common sense. *See, e.g.*, *Daniel Chapter One*, 405 F. App'x at 506 (rejecting "scientism"); *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 520–21 (9th Cir. 1994) (rejecting "evolutionism," *i.e.*, the view that "higher life forms evolved from lower ones"); *United States v. Allen*, 760 F.2d 447, 449–51 (2d Cir. 1985) (rejecting "nuclearism," *i.e.*, the view that nuclear weapons are "sacred objects"); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 79 (2d Cir. 2001) (holding that an "objective observer" would not consider a public school's celebration of Earth Day to be a religious endorsement).

Common sense similarly forecloses Sevier's claim here. Whatever else religion might entail, it at minimum requires adherence to one or more fundamental beliefs. *See, e.g.*, *Kalka v. Hawk*, 215 F.3d 90, 98–99 (D.C. Cir. 2000). "Homosexuality," by contrast, is not a set of beliefs at all. It is a description of a person's sexual orientation. Similarly, the argument that acceptance of homosexuality constitutes a "religion"—if that is what Sevier means to assert—

also fails.[1]  The gay rights movement bears no trappings of "religion" as that concept is widely understood, and Sevier has not plausibly alleged that a reasonable person would perceive the display of the rainbow flags as religious in nature.  *See, e.g.*, *Africa v. Pennsylvania*, 662 F.2d 1025, 1032, 1035 (3d Cir. 1981) (religious "indicia" include "address[ing] fundamental and ultimate questions having to do with deep and imponderable matters;" creating a "comprehensive . . . belief[ ]system;" and displaying "[s]tructural characteristics" like "ceremonial functions" and "observance of holidays").  Nor has Sevier alleged that participants in the gay rights movement consider it "religious" or, indeed, that there are any self-identified adherents to the "religion" he posits.  *Cf. Allen*, 760 F.2d at 450 (refusing "to recognize as a 'religion' what the religion's alleged adherents have not identified as such").  That Sevier's *own* beliefs may derive from his religion does not transform any contrary view of the subject into religious expression.  *See, e.g.*, *Altman*, 245 F.3d at 78 ("[T]he Establishment Clause is not transgressed merely because a statement either is in agreement with, or is in disagreement with, a given religious tenet.").  Sevier does make passing reference to "secular humanism," "moral relativism," "individualism," and other concepts that could conceivably constitute a set of religious beliefs for the purposes of an Establishment Clause claim.  He has not, however, alleged any plausible link between those more general moral philosophies and the "Gay Pride Rainbow Colored Flags" he argues have actually caused his injury, leaving his claims untethered

---

[1]  Sevier's definition of "religion" as "a set of unproven faith[-]based assumptions and naked assertions that can only be taken on faith," Dkt. 1 at 17–18 (Compl. ¶ 34), has already been rejected by the D.C. Circuit, *see Crowley v. Smithsonian Inst.*, 636 F.2d 738, 742 (D.C. Cir. 1980) ("The fact that religions involve acceptance of some tenets on faith without scientific proof obviously does not mean that all beliefs and all theories which rest in whole or in part on faith are therefore elements of a religion as that term is used in the [F]irst [A]mendment.").

from anything resembling a religion for Establishment Clause purposes. *See, e.g.*, Dkt. 1 at 28 (Compl. ¶ 66).

In short, Sevier's argument proves way too much. If the mere acceptance of homosexuality—or support for gay rights—constitutes a "religion" for Establishment Clause purposes, then the same conclusion would presumably follow for *any* value judgment about how people should or should not live their lives. The Establishment Clause's meaning is not so capacious. *See, e.g., United States v. Seeger*, 380 U.S. 163, 165 (1965) (recognizing distinction between religious beliefs and those that are "essentially political, sociological, or philosophical"); *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972) (same). As the Ninth Circuit put it:

> "[I]f anything can be religion, then anything the government does can be construed as favoring one religion over another, and . . . the government is paralyzed . . . ." While the First Amendment must be held to protect unfamiliar and idiosyncratic as well as commonly recognized religions, it loses its sense and thus its ability to protect when carried to [such] extreme[s] . . . .

*Alvarado*, 94 F.3d at 1231 (first two alterations in original) (quoting James M. Donovan, *God Is As God Does: Law, Anthropology, and the Definition of "Religion*," 6 Seton Hall Const. L.J. 23, 25 (1995)). Because "homosexuality" or support for gay rights is not a "religion" in any meaningful sense under the Establishment Clause, Sevier's Establishment Clause claim fails as a matter of law.

Although all of Sevier's claims appear to rely on this premise, his equal protection and due process claims fail for other reasons as well. Both merely reiterate Sevier's view (expressed in other lawsuits) that the Constitution gives him the right to marry his computer. Dkt. 1 at 30, 31–32 (Compl. ¶¶ 81, 87). The only relevance these allegations have to his present lawsuit— which again, seeks the removal of gay pride flags—is that those flags "*remind*[]" him that he cannot presently marry his computer. *Id.* at 30–31 (Compl. ¶ 82) (emphasis added); *accord id.* at

15

32 (Compl. ¶¶ 88–89).  Even without passing on Sevier's right to human-laptop marriage, it is safe to say that government activities that remind Sevier of his alleged constitutional injury do not create new constitutional injuries in their own right.  These claims, accordingly, will be dismissed for lack of standing.  Finally, this Court lacks jurisdiction to entertain Sevier's request for a declaratory judgment that *Obergefell* and *Windsor* amount to "acts of judicial tyranny."  *Id.* at 35 (Compl. Prayer for Relief).  This claim presents no case or controversy.  Opining on the judicial propriety of these cases would have no effect on any of the even potentially cognizable allegations of injury made by Sevier.  It goes without saying, moreover, that it is not the role of this Court—or any lower court—to review the merits of binding Supreme Court precedent.

For these reasons, the Court will grant Defendants' motion to dismiss.

## B.  Remaining Motions

In the interest of promptly and conclusively resolving this litigation, the Court addresses in brief the remaining pending motions.

### 1.  *Motion to Intervene and Motion for Summary Judgment*

A proposed intervenor under Rule 24(a) must first demonstrate Article III standing.  *See Roeder*, 333 F.3d at 233–34.  Here, Gunter, Kohl, and Harley have primarily argued that the message of the gay pride flag is "an oppressive and offensive religious symbol," *see, e.g.*, Dkt. 5 at 8, and reiterated Sevier's objections to *Obergefell*, *see, e.g.*, *id.* at 8–12.  The former is the sort of generalized offense that does not constitute an injury for purposes of an Establishment Clause claim.  *In re Navy Chaplaincy*, 534 F.3d at 764.  The latter allegations, as noted above, are unrelated to any particular injury identified by Gunter, Kohl, and Harley, and thus fail to establish standing.

The strongest case for standing rests on Gunter's single, unsupported statement that "[h]e is a D.C. lobbyist," *id.* at 22, and the proposed intervenors' suggestion that they do not "feel

welcomed or comfortable walking the halls of the legislative buildings with the gay pride rainbow colored flags on display," *id.* at 23.  These assertions are less detailed than those made by Sevier, whose argument for standing at least alleged personal contact with the flags in question.  The lack of any further detail regarding interactions with the flags at issue, or past lobbying or legislative efforts, combined with the proposed intervenors stating that they live in Utah, not Washington, D.C., *see, e.g.*, *id.* at 1, leaves the Court without any basis to conclude that they have alleged facts sufficient to establish standing to sue.  Moreover, unlike Sevier, their motion places its heaviest emphasis on grievances that are substantially more generalized, including opposition to homosexuality, gay rights, and—again—the *Obergefell* decision.  Taken together, the Court concludes that Gunter, Kohl, and Harley have failed to establish that they possess Article III standing to challenge the display of the flags displayed by Defendants.[2]

Even if the proposed intervenors did have standing, however, the Court would still deny them leave to intervene.  Gunter, Kohl, and Harley have advanced the same legal theories and arguments as Sevier, down to—frequently—the very wording of their motion to intervene and subsequent motions for summary judgment.  In light of this congruence, the Court concludes that the proposed intervenors have failed to identify any way in which Sevier fails to represent their interests in this litigation.  *See Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994) (holding that proposed intervenor had failed to carry its burden because it had "offered no argument not also pressed by" the plaintiff); *see also Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) ("Where the party and the proposed

---

[2]  Both the proposed intervenors and Sevier at times make nods toward taxpayer standing, but such a theory of standing is unavailable in this action because it requires the identification of a specific "exercise[] of congressional power under the taxing and spending clause of Art. I, § 8 of the Constitution."  *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 602 (2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 102 (1968)).

intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies." (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009))). Absent such a showing, they are not entitled to intervene as of right. *Deutsche Bank Nat'l Tr. Co.*, 717 F.3d at 192.

That leaves the question whether permissive intervention is appropriate. "It remains . . . an open question in [the D.C.] Circuit whether Article III standing is required for permissive intervention." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (quoting *In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013)); *see also Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 38 (D.D.C. 2017) (same). Because the legal theories advanced by the proposed intervenors are baseless, the Court need not reach that question and will, instead, use the "wide latitude" it enjoys in evaluating motions to intervene under Rule 24(b) to decline to allow the proposed intervenors to advance the same flawed arguments. The motions for summary judgment filed by two of the proposed intervenors must then also be denied, because they are not parties to this case.

### 2. *Motion to Amend*

Sevier filed a motion to amend his complaint on November 4, 2017. Dkt. 25. Defendant's motion to dismiss was filed on September 22, 2017. Dkt. 6. As applicable here, the Federal Rules of Civil Procedure provide that a motion to amend may only be filed as of right within 21 days of the receipt of a responsive pleading or "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1). Because Sevier filed forty-four days after service of Defendants' motion to dismiss, he may not amend as of right. Sevier briefly suggests that the Court's order extending the time for his opposition to the motion to dismiss also constituted an extension of the deadline to amend his complaint. Dkt. 25 at 7. Sevier's interpretation of the Court's Minute Order (Sept. 24, 2017), is incorrect. "While the Court has the authority to extend

both the time period for filing an opposition to a motion and the 21-day time period for filing an amended complaint as a matter of course under Rule 15, the simple fact that the Court granted an extension of the former time period does not automatically effect an extension of the latter and fuse these two separate deadlines into one, as plaintiff contends." *Hayes v. District of Columbia*, 275 F.R.D. 343, 345 (D.D.C. 2011) (finding support for this proposition in the history and purposes of Rule 15(a)). The Court, accordingly, holds that its September 24, 2017 order did not extend Sevier's time to amend his complaint and will deny his "motion" under Rule 15(a)(1).

Sevier has moved, in the alternative, to amend his complaint with leave of the Court. Fed. R. Civ. P. 15(a)(2). Sevier's amended complaint, however, does nothing to cure the deficiencies in his original pleadings. Because the proposed amendment is therefore futile, the Court will deny Sevier leave to file the amended complaint. *See Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996).

3.    *Motions to File Overlength Documents*

Sevier seeks leave to file an overlength brief in reply to Defendants' opposition to his motion to amend. Dkt. 30. Defendants have not opposed that request, and the Court, accordingly, will grant it. Sevier also seeks leave to "file a reply to the Defendants' reply" to his opposition to the motion to dismiss, preferably at a length beyond that specified in Local Rule 7(e). Dkt. 32 at 1. "[S]urreplies are generally disfavored, and the determination as to whether to grant or deny leave is entrusted to the sound discretion of the district court." *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012) (citations omitted). Here, the proposed surreply merely repeats earlier arguments and discusses the proposed intervenor's motion for summary judgment, which at the time of the motion had not yet been filed. *Compare* Dkt. 32 (filed November 23, 2017), *with* Dkt. 34 (filed November 28, 2017). The Court will therefore deny the motion.

4. *Motion for Scheduling Conference*

Sevier has moved for a scheduling conference. He requests oral argument on his motion for summary judgment and requests, in the alternative, that the Court set a schedule for discovery. Because the Court concludes that oral argument is unnecessary and that the case should be dismissed, it will deny that motion.

5. *Motion to Strike*

Sevier has also moved to strike from the docket a document that the Clerk of the Court found to have been entered in error. *See* Dkt. 40; Dkt. 39; Notice of Error (Dec. 28, 2017). Because the filing was already deemed to have been entered in error and removed from the docket, nothing remains to strike. The Court will therefore deny the motion.

6. *Motion to Supplement*

Sevier has moved to supplement many of his earlier filings with documents either he or the proposed intervenors have filed in other cases. Beyond reiterating arguments already made, these filings add nothing material to the Court's consideration of the pending motions. Under Rule 15(d), the Court retains discretion over when and whether to permit supplementation of earlier pleadings, but declines to do so in the present case given that the filings are duplicative of those already contained in the record.

7. *Motion for Leave to File Amicus Brief*

The National Alliance of Black Pastors, Dkt. 48, and Coalition of Doctors Defending Reparative Therapy, Dkt. 49, have both moved for leave to file amicus briefs. The Court will order that those motions be granted, and the briefs be filed.

## CONCLUSION

For these reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 8; **DENY** the motion to intervene, Dkt. 5; **DENY** the motion to amend the complaint, Dkt. 25; **GRANT** the motion to file an overlength reply in support of the motion to amend the complaint, Dkt. 30; **DENY** the motion to file an overlength surreply to the motion to dismiss, Dkt. 32; **DENY** the motions for summary judgment filed by the proposed intervenors, Dkt. 34; Dkt. 47; **DENY** the motion for a scheduling conference, Dkt. 36; **DENY** the motion to strike, Dkt. 40; **DENY** the motions to supplement, Dkt. 41; Dkt. 46; and **GRANT** the motions for leave to file amicus briefs, Dkt. 48; Dkt. 49.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 26, 2018